UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
PROFESSIONAL SPORT SERVICE FI OY,

                              Petitioner,                         **DECISION AND ORDER**

          -against-                                 19-CV-5904 (CS)

PUCK AGENCY LLC,

                              Respondent.
----------------------------------------------------------------x

Appearances:

Jonathan S. Bodner
Bodner Law PLLC
Great Neck, New York
*Counsel for Petitioner*

Steven Mitnick
Marc D. Miceli
SM Law
Oldwick, New Jersey
*Counsel for Petitioner*

Joseph I. Orlian
Law Offices of Joseph I. Orlian, PC
New York, New York
*Counsel for Respondent*

Seibel, J.

       This decision resolves a petition to confirm a foreign arbitration award. On June 24, 2019, Petitioner Professional Sport Service Fi Oy ("PSS") filed a petition to confirm an arbitration award pursuant to the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 ("New York Convention"); *see also* 9 U.S.C. § 203 (giving United States district courts original jurisdiction over actions or proceedings falling under the New York Convention). (Doc. 1 ("Pet.").) The

Award, rendered on November 22, 2018, was issued against Respondent Puck Agency LLC ("Puck Agency"). (Doc. 5 ("Miceli Decl.") Ex. B ("the Award").)[1] For the following reasons, Petitioner's motion to confirm the Award is GRANTED in part and DENIED in part.

## I. BACKGROUND

### A. Facts

The following facts are taken from the PSS's Petition to Confirm Arbitration Award, (Pet.), Respondent's Answer, (Doc. 14 ("R's Answer")), the Declaration of PSS's manager, Jarmo Kork, (Doc. 6 ("Kork Decl.")), the Declaration of Petitioner's counsel Marc D. Miceli, (Miceli Decl.), and the exhibits submitted by Petitioner, (*id.* Exs. A-C; Kork Decl. Exs. A-N).[2]

PSS and Puck Agency are in the business of representing ice hockey players. (Award at 5 ¶ 1.) PSS is active primarily in Finland while Puck Agency is active primarily in North America. (*Id.*) In the summer of 2012, they entered into a five-year agreement that governed the terms of the parties' joint representation of certain clients. (*Id.* Ex. A ("Agreement") at 1-2, 8.) The Agreement required Puck Agency to exclusively use PSS for the referral and recruitment of clients in Finland, (*id.* ¶ 2.3), and entitled PSS to a portion of the resulting commissions Puck Agency collected from the clients, (*see id.* ¶ 2.4). Puck Agency was entitled to collect commissions from PSS should any of Puck Agency's clients return to play ice hockey in Europe or Russia. (*See id.*)

---

[1] Citations to the Award refer to the pagination generated by the Court's Electronic Case Filing System and printed across the top of each page.

[2] "[C]ourts commonly adjudicate petitions to confirm arbitral awards based solely on the petition, any accompanying papers, and any response." *Wells Fargo Advisors, LLC v. Soliman*, No. 15-CV-1139, 2015 WL 4619821, at *2 (S.D.N.Y. Aug. 4, 2015), *report and recommendation adopted*, 2015 WL 6745960 (S.D.N.Y. Nov. 4, 2015), *amended*, 2016 WL 270454 (S.D.N.Y. Jan. 21, 2016).

Upon the Agreement's expiration in 2017, PSS requested payment for past commissions owed under the Agreement and claimed that it was entitled to certain future commissions. (Award at 6 ¶ 8.) On April 23, 2018, PSS initiated arbitration proceedings in Finland to resolve the parties' dispute. (*Id*. at 7 ¶ 9.) On May 23, 2018, the Board of the Finland Chamber of Commerce appointed Judge Henrik Fieber as the sole arbitrator. (*Id.* at 7 ¶ 11.) Judge Fieber required each party to pay €22,500.00 as an advance on arbitration costs. (*Id.* at 7 ¶ 12.) Both parties timely paid the advance in June 2018. (*Id*.)

The arbitration hearing took place in Helsinki, Finland, and lasted from October 22, 2018 to October 24, 2018. (*Id.* at 7 ¶ 16.) On November 22, 2018, Judge Fieber entered an award against Puck Agency. (*Id.* at 2.) Under the Award, Petitioner was awarded the following amounts to be paid by Respondent:

(1) $76,616.00 plus 5% interest from July 5, 2017, until payment is made, to compensate Petitioner for commissions Respondent withheld during the 2016-17 hockey season, (Award at 29 ¶ 129; *id.* at 38 ¶ 2);

(2) $171,919.60 plus 5% interest from July 5, 2018, until payment is made, to compensate Petitioner for commissions Respondent collected after the expiration of the Agreement during the 2017-18 season, (*id.* at 34 ¶ 155; *id.* at 38 ¶ 4);

(3) $46,326.99[3] for costs and expenses incurred by Petitioner in connection with the arbitration proceeding, together with delay interest pursuant to Section 4(1) of the Finnish Interest Act from one month from the date of the Award until the amount has been paid in full, (*id.* at 37 ¶ 165; *id.* at 38 ¶ 6);

(4) $11,710.94[4] for 25% of Judge Fieber's fees and costs, (*id.* at 34 ¶ 157; *id.* at 38 ¶ 5);

---

[3] This number represents €40,611.25 converted to United States Dollars ("USD") as of November 22, 2018. (Pet. ¶ 10(c); Kork Decl. ¶ 4(c).) Respondent does not dispute Petitioner's calculations of the conversion rate.

[4] The sum of $11,710.94 represents 25% of €41,067.00 converted to USD as of November 22, 2018, (Pet. ¶ 10(d)), and the sum of €41,067.00 comprises €40,000 for the arbitrator's compensation and €1,067.00 for the arbitrator's expenses for travel and accommodations, (Award at 34-35 ¶ 157). Under the Award, Petitioner is responsible for one-quarter of the total

3

(5) Future commissions for as long as the following players are represented by Puck Agency: Pekka Rinne, Erik Haula, Vili Saarijärvi, Juho Lammikko, Kasimir Kaskisuo, Juuso Välimäki, Sebastian Repo, and Sami Niku, (*id.* at 30 ¶ 136; *id.* at 33 ¶ 149; *id.* at 38 ¶ 3).[5]

Petitioner calculates that Respondent owes it $650,187.00 for future commissions.[6] (Pet. ¶¶ 13-15; Kork Decl. ¶¶ 9-20.)

B. **Procedural History**

On June 24, 2019, PSS filed its motion to confirm the arbitration award, (Pet.), along with the declaration of PSS's manager, (Kork Decl.), the declaration of counsel, (Miceli Decl.), and accompanying exhibits. On August 21, 2019, Respondent filed its Answer, (R's Answer), and on September 5, 2019, Petitioner filed its reply, (Doc. 15). Petitioner asks that the Court

---

arbitrator's costs (€10,266.75) and Respondent is responsible for paying three-quarters of these costs (€30,800.25). (*Id.* at 38 ¶ 5.) The parties each paid €22,500.00 in advance to the arbitrator, resulting in an excess of €3,933.00 that was split among the parties, with Petitioner receiving €1,967.00 and Respondent receiving €1,966.00. (*Id.* ¶ 12.) Thus, Petitioner paid €20,533.00 (€22,500.00 – €1,967.00) but the Award only calls for Petitioner to pay €10,266.75. The difference between what Petitioner paid and what it was supposed to pay is €10,266.25, or $11,710.94.

[5] Certain Finnish players PSS recruited and referred to Puck Agency are referred to as "RF Clients" under the terms of the Agreement. (Award at 5 ¶ 2.) Neither party disputes that Petitioner has the right to future commissions with regard to the eight specified RF clients. (*Id.* at 30 ¶ 136.)

[6] This sum represents Kork's calculations of commissions for the 2018-19 hockey season, tripled to account for the 2019-20 and 2020-21 hockey seasons. (Kork Decl. ¶¶ 9-20.) Kork calculated the commissions for the 2018-19 hockey seasons by obtaining the RF Clients' base salaries (found online), calculating the commission owed to the players' agents, and dividing that number in half to be split by Petitioner and Respondent. (*See id.* ¶¶ 12-20.) Kork reasons that because the commission for the 2018-19 hockey season is $216,729.00, and he "do[es] not know what the commissions will be for the next two seasons, [he is] estimating and projecting that the next two seasons will be the same." (*Id.* ¶ 20.) Kork acknowledges that the figures he used to arrive at $216,729.00 for the 2018-19 hockey season "may fluctuate" over the next two seasons. (*Id.*)

confirm the Award in favor of Petitioner in the amount of $973,514.58 plus applicable interest. (Pet. ¶¶ 15, 24.)

## II. DISCUSSION

### A. Standard of Review

Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-08, which codifies the New York Convention, governs arbitration agreements that arise from a "legal relationship, whether contractual or not, which is considered as commercial," except when those relationships are "entirely between citizens of the United States" and are otherwise domestic in nature. 9 U.S.C. § 202. Applying § 202, the Second Circuit has held that where an agreement to arbitrate "involve[s] parties domiciled or having their principal place of business outside [the United States]," that agreement is governed by the New York Convention. *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir. 1997) (internal quotation marks omitted). Because Petitioner is incorporated in Finland, (Pet. ¶ 2), the New York Convention governs the Petition. *See Farrell v. Subway Int'l, B.V*, No. 11-CV-08, 2011 WL 1085017, at *1 (S.D.N.Y. Mar. 23, 2011) (New York Convention governs arbitration agreements involving "at least one foreign party").[7]

When a party applies to confirm an arbitral award under the New York Convention, "[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. Article V of the Convention specifies seven exclusive grounds upon which courts may refuse to recognize an award. *See* New York Convention Art. V; *see OOO FC Grand Capital v. Int'l*

---

[7] Respondent is a corporation organized under Delaware law and based in Chappaqua, New York. (Pet. ¶ 3.)

*Pharm. Servs. Ltd.*, No. 16-CV-6156, 2017 WL 8813135, at *5-6 (E.D.N.Y. Dec. 15, 2017), *report & recommendation adopted*, 2018 WL 879027 (E.D.N.Y. Feb. 14, 2018).[8]

The party seeking recognition and enforcement of a foreign arbitral award need provide only: (a) a duly authenticated original award or an authentic copy of the award and (b) an original or certified copy of the agreement to arbitrate. New York Convention Art. IV(1); *see Montauk Oil Transp. Corp. v. S.S. Mut. Underwriting Ass'n (Berm.) Ltd.*, No. 90-CV-3792, 1995 WL 361303, at *1 (S.D.N.Y. Jun.16, 1995), *aff'd*, 79 F.3d 295 (2d Cir. 1996). The party

---

[8] The seven limited bases upon which a court may refuse recognition or enforcement of an award are:

1. "The parties to the agreement . . . were . . . under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it";

2. "The party against whom the award is invoked was not given proper notice . . . of the arbitration proceedings or was otherwise unable to present his case";

3. "The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration";

4. "The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place";

5. "The award has not yet become binding on the parties, or has been set aside or suspended";

6. "The subject matter of the difference is not capable of settlement by arbitration under the law of [the country where recognition and enforcement is sought]"; or

7. The recognition or enforcement of the award would be contrary to the public policy of [the country where recognition and enforcement is sought]."

New York Convention, Art. V.

opposing enforcement of an arbitral award has the burden to prove that one of the seven defenses under the New York Convention applies. New York Convention Art. V(1); *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 313 (2d Cir. 1998); *see Mercury Venture Int'l Ltd. v. DGM Commodities Corp.*, No. 13-CV-1521, 2015 WL 893652, at *7 (E.D.N.Y. Mar. 2, 2015). The burden is a heavy one, as "the showing required to avoid summary confirmance is high." *Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 23 (internal quotation marks omitted). "A district court's review of an arbitration award is extremely deferential," and "[s]uch deference is particularly appropriate with respect to foreign arbitration awards." *Korean Trade Ins. Corp. v. Eat It Corp.*, No. 14-CV-3456, 2015 WL 1247053, at *4 (E.D.N.Y. Mar. 16, 2015); *see Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007) ("Confirmation under the [New York] Convention is a summary proceeding in nature" and "[a] district court confirming an arbitration award does little more than give the award the force of a court order.").

A petition to confirm an arbitral award is treated as a motion for summary judgment. *See Albtelecom SH.A v. UNIFI Commc'ns, Inc.*, No. 16-CV-9001, 2017 WL 2364365, at *4 (S.D.N.Y. May 30, 2017) (applying summary judgment standard to motion to confirm arbitration award under New York Convention); *see also D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (petition to confirm arbitral award is "treated as akin to a motion for summary judgment"). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be

7

counted." *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to "present evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). Where an affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." *Id.* 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and

supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

**B.      Application**

Petitioner argues that under the Award, it is entitled to at least $973,514.58. (Pet. ¶¶ 15, 24.)[9] That number is comprised of: (1) $76,616.00 plus 5% interest from July 5, 2017, until payment is made to compensate Petitioner for commissions Respondent withheld during the 2016-17 hockey season, (Arbitral Award at 29 ¶ 129; *id.* at 38 ¶ 2); (2) $171,919.60 plus 5% interest from July 5, 2018, until payment is made to compensate Petitioner for commissions Respondent collected after the expiration of the Agreement during the 2017-18 season, (*id.* at 34 ¶ 155; *id.* at 38 ¶ 4); (3) $46,326.99 for costs and expenses incurred by Petitioner in connection with the arbitration proceeding, together with delay interest pursuant to Section 4(1) of the Finnish Interest Act from one month from the date of the Arbitral Award until the amount has been paid in full, (*id.* at 37 ¶ 165; *id.* at 38 ¶ 6); (4) $11,710.94 for Judge Fieber's fees and costs, (*id.* at 34 ¶ 157; *id.* at 38 ¶ 5); and (5) future commissions for three hockey seasons, which Petitioner calculates to be $650,187.00, (*id.* at 30 ¶ 136; *id.* at 33 ¶ 149; *id.* at 38 ¶ 3; *see* Pet. ¶¶ 13-14).[10]

Respondent only challenges two aspects of the Petition. First, Respondent contends that it does not owe $11,710.94 in connection with the arbitrator's fees and costs. (R's Answer ¶ 10.) Second, Respondent asserts that it does not owe Petitioner any future commissions, except for

---

[9] In calculating these amounts, Petitioner included interest accrued up to May 31, 2019. (Kork Decl. ¶¶ 6-8.) With additional interest accrued until payment is made, the totals would be higher.

[10] As of the filing of its Petition on June 24, 2019, PSS calculated the total accrued interest to be $16,754.05. (Kork Decl. ¶ 6.)

9

the amount specified in the Arbitration Award for the 2017-2018 season. (*See id.* ¶ 8.) Thus, according to Respondent, Petitioner is entitled to no more than $311,616.64 (plus interest). (*Id.* ¶ 1.)

### 1. Arbitrator's Costs and Fees

Petitioner asserts that Respondent owes Petitioner $11,710.94 as part of Respondent's obligation to pay three-quarters of the arbitrator's costs under the award. (Pet. ¶ 10(d).) Respondent contends that "there is nothing in the arbitration award that suggests that the Plaintiff is entitled to the $11,710.94 it seeks in connection with the arbitrator's fees and costs." (R's Answer ¶ 10 (internal quotation marks and alterations omitted).)

I find that Petitioner is entitled to the $11,710.94. The Award directs that Puck Agency pay three-quarters of the total arbitration cost of €41,067.00, (Award at 38 ¶ 5), and notes that each side paid €22,500 up front, (*id.* at 7 ¶ 12). As discussed at note 4, PSS overpaid for the costs of arbitration by €10,266.25.[11] None of the seven defenses has been shown to apply, Puck Agency has not disputed the facts on which PSS relies, and I see no reason why Petitioner is not entitled to this money under the terms of the Award. *Cf. Korean Trade Ins. Corp.*, 2015 WL 1247053, at *5 (denying petitioner's request for arbitration expenses where it failed to demonstrate total amount of arbitration costs and did not present sufficient evidence regarding why it was entitled to requested share). Accordingly, Petitioner is entitled to €10,266.25, which converted to USD as of November 22, 2018 is $11,710.94. (*See* Kork Decl. ¶ 4(d).) This conclusion is consistent with the New York Convention, 9 U.S.C. § 207 ("The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or

---

[11] The Kork Declaration inconsistently notes that Respondent owes either €10,266.75 or €10,266.25. (*See* Kork Decl. ¶ 4(d).) As explained in note 4, the correct amount is €10,266.25.

enforcement of the award specified in the said Convention."), and the long line of cases that advise that a district court's review of an arbitral award is "very limited," *see, e.g.*, *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005) (internal quotation marks omitted).

        2.        Petitioner's Claim for Future Commissions

Petitioner contends that Respondent owes future commissions for eight RF Clients for three additional hockey seasons, amounting to $650,187.00. (Pet. ¶¶ 13-14; Kork Decl. ¶¶ 11-20.) Respondent argues that there has been no proof that Respondent represents the eight hockey players or that it collected commissions from representing them. (R's Answer ¶ 8.)

This aspect of the Petition is denied. Although the Award did conclude that Petitioner "has the right to future commission for so long as the [eight RF Clients] are represented by [Respondent]," (Award at 38 ¶ 3), Petitioner's only evidence that Respondent continues to represent these players is Kork's declaration, which provides, "I understand that [Respondent] is representing each of the eight (8) hockey players listed," (Kork Decl. ¶ 9). This statement, on its own, is insufficient to support summary judgment because Petitioner has failed to establish Kork's personal knowledge regarding whether Respondent continues to represent the eight hockey players. "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602.

11

Petitioner has not shown that Kork has personal knowledge that the eight hockey players are still represented by Respondent, and thus I disregard that portion of his declaration. *See Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013) ("Only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment, and a district court deciding a summary judgment motion has broad discretion in choosing whether to admit evidence.") (alteration and internal quotation marks omitted). Further, none of the exhibits Petitioner provides shows that the eight players are still represented by Respondent. Under the Award, Petitioner is entitled to future commissions only "for so long as the [eight RF Clients] are represented by [Respondent]," (Award at 38 ¶ 3), but Petitioner has failed to show the absence of a material issue of fact in dispute about whether Respondent still represents the eight hockey players or received commissions from representing them.

More fundamentally, Petitioner is asking me to modify the Award based on evidence that was not before the arbitrator. It provides no authority for the proposition that the New York Convention allows me to do that, and the principles underlying arbitration counsel against it. *See Cong. Sec., Inc. v. Fiserv Sec., Inc.*, No. 02-CV-3740, 2004 WL 829028, at *3 (S.D.N.Y. Apr. 15, 2004) (parties bound by record before arbitrator); *Grey v. F.D.I.C.*, No. 88-CIV-7452, 2002 WL 959564, at *10 (S.D.N.Y. May 8, 2002) ("It is well settled that a court lacks the power to consider newly submitted evidence when reviewing an arbitration proceeding.") (internal quotation marks omitted) (collecting cases). While the Award is clear that PSS is entitled to future commissions "for so long as the [eight RF] players are represented by [Respondent]," (Award at 38 ¶ 3), it does not make any finding in that regard or calculate any such commissions. Were I to award such amounts to PSS, I would not be confirming the Award but rather going

beyond what the arbitrator held. Accordingly, the Petition's request for future commissions is denied.[12]

### III. CONCLUSION

For the reasons set forth above, Petitioner's motion to confirm the Award is GRANTED in part and DENIED in part. The Court, as set forth in the attached order, will enter judgment in favor of Petitioner on all aspects of the Petition except the request for future commissions. The Clerk of Court is respectfully directed to terminate the pending motion, (Doc. 4), and close this case.

**SO ORDERED.**

Dated: November 8, 2019
      White Plains, New York

                                                       *Cathy Seibel*
                                               CATHY SEIBEL, U.S.D.J.

---

[12] Even if Petitioner had established that Respondent continued to represent the eight RF clients and established what commissions Petitioner was owed for the 2018-19 hockey season, Kork's calculations for the 2019-20 and 2020-21 hockey seasons – merely asking for an identical amount as the 2018-19 hockey season – are far too speculative.

13

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PROFESSIONAL SPORT SERVICE FI OY<br><br>Plaintiffs,<br><br>v.<br><br>PUCK AGENCY LLC<br><br>Defendant(s). | Civil Action<br><br>HON.<br><br>**ORDER CONFIRMING ARBITRATION AWARD AND GRANTING RELATED RELIEF** |

**THIS MATTER** having come before this Court on the Petitioner, Professional Sport Service Fi Oy's (the "Petitioner"), motion to confirm an arbitration award and for related relief; and this Court having found that Respondent, Puck Agency LLC (the "Respondent") is bound to a written Arbitration Agreement dated June 14, 2012 and July 30, 2012; and this dispute having been submitted to an arbitrator who, upon hearing with proper notice to all parties, entered an award on November 22, 2018 (the "Arbitral Award"); this Court having jurisdiction to enforce the awards of arbitration pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, dated June 10, 1958 (the "New York Convention") and the Federal Arbitration Act, 9 U.S.C. §201 et seq.; and the Court having considered the written submissions of Petitioner, and any opposition thereto; and for good cause shown;

It is on this ____8th____ day of ____November____, 2019

**ORDERED** as follows:

1. The Arbitral Award against the Respondent, attached hereto as **Exhibit "A"**, is hereby confirmed in its entirety.

1

2. Judgment is hereby entered against Respondent, Puck Agency LLC and in favor of Petitioner, Professional Sport Service Fi Oy, in the total amount of $ 323,327.58 as of May 31, 2019, with applicable interest continuing to accrue, detailed as follows:

   a. **$323,327.58** as of May 31, 2019, comprised of the following amounts as per the Arbitral Award:

      i. **$83,910.26,** comprised of $76,616.00 plus $7,294.26 in interest of 5% on this amount from July 5, 2017 through May 31, 2019, with interest continuing to accrue until payment is made;

      ii. **$179,691.31,** comprised of $171,919.60 plus $7,771.71 in interest of 5% on this amount from July 5, 2018 through May 31, 2019, with interest continuing to accrue until payment is made;

      iii. **$48,015.07,** comprised of $46,326.99 for costs and expenses incurred by Petitioner in connection with the arbitration proceeding, together with delay interest of 7% in the amount of $1,688.08 pursuant to Section 4(1) of the Finnish Interest Act from one month from the date of the Arbitral Award through May 31, 2019, with interest continuing to accrue until the amount has been paid in full;

      iv. **$11,710.94** due from Respondent to Petitioner in connection with the fees and costs paid to the Arbitrator, Henrik Fieber; and

   b. ~~$_____~~ in connection with the Petitioner's rights to future commissions for the hockey players, Pekka Rinne, Erik Haula,

2

Vili Saarijärvi, Juho Lammikko, Kasimir Kaskisuo, Juuso Välimäki, Sebastian Repo and Sami Niku.

3. Respondent shall pay the Petitioner's costs in this action.

*Cathy Seibel*
_____
U.S.D.J.